# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR420-043 |
| | ) | |
| MARVIN LOWE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Marvin Lowe is indicted on four counts of possession with intent to distribute a controlled substance (synthetic cannabinoid), in violation of 21 U.S.C. § 841(a)(1), one count of possession of a controlled substance (cocaine hydrochloride), in violation of 21 U.S.C. § 844, one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). *See* doc. 1 (Indictment). He moves to suppress evidence collected pursuant to a search warrant from a residence located at 1030 Terrace Street, Savannah, Georgia on October 5, 2018. Doc. 29 at 1. The Government opposes. Doc. 35. The Court held a hearing on the motion on August 24, 2020. *See* doc. 43 (Minute Entry). After that hearing, the parties provided supplemental

briefing.  *See* doc. 47 (Defendant's Supplemental Brief); doc. 49 (Government's Supplemental Brief).

## I.   Background

The facts relevant to this motion are simple.  The Savannah Police Department conducted an investigation into possible drug activity.  *See* doc. 29 at 3-4.  In October 2018, as part of that investigation, Savannah Police Detective Benjamin Valdivieso applied for a warrant to search the residence on Terrace St. and two vehicles registered to defendant Lowe. *See* doc. 35 at 2.  The search warrants and applications, including Det. Valdivieso's affidavit, were admitted as exhibits to the hearing.  *See* doc. 43-1 (Exhibit list); doc. 43-2 (Terrace St. Application); doc. 43-3 (Terrace St. Warrant); doc. 43-9 (Application for Vehicle Search Warrant); doc. 43-10 (Vehicle Search Warrant).  The Terrace St. application seeks a warrant to search for evidence of illegal narcotics sales, in violation of various Georgia statutes.  *See* doc. 43-2 at 3.  As mentioned above, Lowe seeks to suppress only evidence collected pursuant to the warrant to search the Terrace St. address.  *See, e.g.,* doc. 29 at 1.

The section stating the probable cause for the Terrace St. warrant identifies several incidents as providing probable cause for issuing the

warrant. *See id*. at 4-9. It begins by recounting several "tips" the Chatham County Counter Narcotics Team received in the spring and summer of 2017. *Id*. at 4. One alleged that drugs, specifically "spice," were being sold out of a particularly described located on 46th Street, in Savannah. *Id*. The other alleged that Marvin Lowe was "trafficking narcotics," from a house located on 46th Street. *Id*.

The affidavit next describes two traffic stops of vehicles Lowe was driving. In December 2017, defendant Lowe was involved in a traffic stop. Doc. 43-2 at 4. A search conducted during that stop revealed "a green leafy material," later determined to be marijuana, a handgun, a further 727 grams of marijuana, 42 bags of "spice," 150 alprazolam (Xanax) pills, and 9 MDMA (ecstasy) pills. *Id*. at 4-5. On June 27, 2018, Lowe was again subject to a traffic stop and a search conducted during the stop revealed 77 whole alprazolam pills, 219 half alprazolam pills, "multiple bags" of marijuana, a mason jar containing "green leafy material," 15 grams of crack cocaine, 18 MDMA pills, and 88 oxycodone pills, $2075 in US currency, and 35 pouches of "herbal potpourri," of various brands. *Id*. at 5.

The affidavit reports two other traffic stops in June and July of 2018. *See id*.   In the first, officers discovered what was either marijuana or "synthetic marijuana" and the driver told officers that he obtained it from a house on 46th St.   *Id*. at 5.   In the second, officers stopped a vehicle after observing its occupants "speak with a black male at the corner of 46th St[.] and Hopkins St[.] while Marvin Lowe was present."   *Id*.   "Marijuana residue . . . was present throughout the entire vehicle[,]" and one of the occupants was discovered in possession of a stolen firearm.   *Id*.   One of the passengers informed officers that he had "come from 46th and Hopkins St[.] but did not state his business at the location."   *Id*.

The affidavit indicates that "based on the above information," law enforcement began surveilling Lowe's 46th St. residence and the house next door, where he was "observed" on "multiple dates."   Doc. 43-2 at 6. Despite initially surveilling the locations on 46th St., the affidavit's information quickly shifts its focus to Terrace St.   In July 2018 surveillance observed a car registered to Lowe, and Lowe himself, at the Terrace St. address.   *Id*.   After another traffic stop, Lowe informed a detective that Terrace St. was "his new address."   *Id*.   An August 2018 traffic stop of a vehicle seen leaving Terrace St. revealed marijuana and

MDMA pills, but the driver refused to state where he obtained the pills. *Id*. A vehicle connected to Lowe was identified as present at Terrace St. after police responded to an altercation there. *Id*.

During surveillance conducted on Terrace St. on August 15th, 2018, law enforcement observed Lowe "on the front porch." Doc. 43-2 at 7. Shortly after that, officers saw an individual enter the house and exit shortly after into a vehicle. *Id*. The vehicle was stopped and the individual was discovered to have 29 MDMA pills, but he would not state where he obtained them. *Id*. Several minutes later, one of the officers observed Lowe engage in what the officer believed was a hand-to-hand drug transaction. *Id*. The apparent purchaser was stopped and found in possession of 3.0 grams of material later determined to be "synthetic marijuana or herbal potpourri." *Id*. That individual also declined to state where he obtained the synthetic marijuana. *Id*. Several more minutes passed and officers observed a third individual "make contact with the residence," and leave in a vehicle. *Id*. After a traffic stop, the individual was discovered in possession of "herbal potpourri" and a substance believed to be marijuana, but which tested negative. *Id*.

5

The affidavit also states that in August 2018, an informant told Det. Valdivieso that Lowe, who the informant also identified by the nickname "Doona," sold "spice," which he explained was "synthetic marijuana," from Terrace St. *Id*. at 7-8.  On August 22, 2018, a vehicle registered to Lowe was observed at Terrace St. *Id*. at 8.  On August 23, 2018, officers conducted a "trash pull" at the address and discovered "70 assorted empty pouches of 'herbal potpourri,' . . . two empty boxes of clear plastic bags commonly used in distributing illegal substances as well as a brillo pad commonly used in smoothing illegal substances." *Id.* at 8.

On September 11, 2018, a vehicle registered to Lowe, and which he was driving, was stopped for a traffic violation. *Id*. at 8.  A K9 alerted on the vehicle, but Lowe refused to give officers the key to access the car's trunk.  The vehicle was impounded and a search warrant was obtained.  A search of the trunk revealed pills "that had the appearance of MDMA/Ecstasy pills," and which subsequently field-tested positive for MDMA, 25 pouches of a particular brand of "herbal potpourri," several loose rounds of various caliber ammunition, a box containing 27 rounds of .38 ammunition, and a pistol magazine. *Id*. at 8-9.

In September 2018, an unidentified individual informed police that someone, who had a car similar to one Lowe was known to own and whose mother lived at an address where Lowe's mother was known to reside, was selling drugs from a residence "located at Terrace St[.] and Kollock St[.] (Marvin Lowe's residence)." Doc. 43-2 at 9. The anonymous source also claimed that Lowe was buying stolen goods. *Id.* On September 22, 2018, surveillance observed an individual enter the Terrace St. residence and depart in a vehicle. *Id.* The vehicle was searched during a traffic stop and marijuana was discovered. *Id.* The individual discovered in possession of the marijuana told officers that she purchased it from "Doona,"—which the affidavit states is Lowe's nickname—at a house identified as the Terrace St. residence. *Id.* She also informed officers that she observed "narcotics and guns" in the open at the residence. *Id.* Det. Valdivieso concluded that, "[b]ased on the surveillance . . . conducted on 1030 Terrace St[.] in the previous months, along with the history of narcotics associated with this location," he believed that, among other things, "evidence of the illegal sales of narcotics are being stored in and around the residence . . . ." *Id.* at 10.

7

Lowe argues that various elements of the probable cause alleged in the affidavit should be discounted.  First, he argues that the anonymous tips must be discounted since they lack any indicia of reliability.  *See* doc. 29 at 6-7.  Second, he argues that the traffic stops involving defendant were "pretextual," as no record of traffic violations has been provided.  *Id*. at 7-8.  Third, he contends that any information discovered in the December 2017 traffic stop was too stale to support probable cause for the warrant in 2018.  *Id*. at 9.  Fourth, he claims that the June 27, 2018 traffic stop was impermissibly prolonged, rendering any information it produced tainted.  *Id*. at 9-10.  Subsequent briefing argued that the September 11, 2018 stop was also impermissibly prolonged.  *See* doc. 47 at 11.  Finally, Lowe asserts that officers' failure to activate dashboard or body-worn cameras during the traffic stops "is prima facie evidence of the exercise of bad faith in failure to preserve evidence."[1]  *Id*. at 10-15.  Once the tainted evidence is purged from the application, he contends, the remaining facts are insufficient to support probable case.

---

[1]  Additional body-worn camera video was produced by the Government after the hearing.  *See* doc. 46.  Defendant did not discuss the implications of that production for his argument in the original motion.  His silence on the issue leads the Court to conclude that his objection to the lack of video footage is limited to the traffic stops on December 11, 2017 and July 28, 2018.  *See* doc. 29 at 10.

## II.    Analysis

The Supreme Court has established that, in evaluating the sufficiency of an issuing magistrate's determination of probable cause, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). In considering whether the affiant's proffer and issuing judge's acceptance of the existence of "probable cause" for the authorizations are adequate, it is important to remember that the standard for review is "exceedingly deferential." *See United States v. Rangel*, 2018 WL 817845, at * 6 (S.D. Ga. Jan. 18, 2018). "A reviewing court's task is not to make a *de novo* finding of probable cause but rather to decide whether the issuing magistrate—whose assessment of the affidavit's factual presentation is entitled to 'great deference'—had a 'substantial basis' for finding probable cause." *Id.* (quoting *Gates*, 462 U.S. at 236, 238-39); *see also United States v. Leon*, 468 U.S. 897, 914 (1984) ("Reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's

determination." (citations omitted)).   In even "'doubtful or marginal cases,'" the probable cause determination should be upheld.  *Rangel*, 2018 WL 817845, at * 6 (quoting *United States v. Scott*, 555 F.2d 522, 527 (5th Cir. 1977)).

Despite the deferential standard applied to the issuing magistrate's probable cause determination, the briefing and argument to date is simply insufficient.  The Government's brief suggests that the Court should consider Lowe's argument that the challenged traffic stops were unconstitutional through the rubric of *Franks v. Delaware*, 438 U.S. 154 (1978).  *See* doc. 35 at 13-14; *see also* doc. 49 at 1.  It also argues that, if the Court were to determine that the affidavit did not establish probable cause, the good-faith exception to the exclusionary rule, established in *Leon*, should apply.  *Id.* at 15-16.  The Government's arguments miss the mark and defendant's briefs have not corrected the omission.

*Franks* does not apply to allegations that a warrant was obtained based on evidence obtained during a prior illegal search.  *See United States v. Latimore*, 2014 WL 3109183, at * 2, *2 n. 1 (N.D. Ga. July 7, 2014) (stating that *Lockett* provides the relevant procedure to assert a "challenge [that] the information contained in a search or seizure

warrant affidavit . . . was arguably seized in violation of the Fourth Amendment."); *see also United States v. Lockett*, 533 F. App'x 957, 965-66 (11th Cir. 2013) (citing *United States v. Noriega*, 676 F.3d 1252 1260-61 (11th Cir. 2012)); *United States v. Zarabozo*, 378 F. App'x 939, 940 (11th Cir. 2010) ("If a search warrant is based on probable cause discovered because of an illegal search, generally the search warrant is tainted and the evidence obtained pursuant thereto is inadmissible."). As the Court noted in *Latimore*, a defendant alleging that a warrant was predicated on an illegal traffic stop "was not alleging a *Franks* violation . . . and therefore he did not have to satisfy *Franks* 'substantial preliminary showing that a false statement made knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and that the allegedly false statement was necessary to the finding of probable cause.[']"  2014 WL 3109183, at * 2 n 1 (quoting *Franks*, 438 U.S. at 171-72).

Moreover, the application of *Leon* in cases involving reliance on illegally obtained evidence is questionable, at best.  *See United States v. McGough*, 412 F.3d 1232, 1240 (11th Cir. 2005) (holding that the *Leon* exception does not apply where a search warrant affidavit is tainted by

11

inclusion of illegally obtained evidence); *see also United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) (cited in *McGough*, 412 F.3d at 1232) ("[T]he good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search."); *but see United States v. McClain*, 444 F.3d 556, 565 (6th Cir. 2005) (noting a circuit split between the Ninth and Eleventh Circuits, who hold that the good faith exception cannot apply "in a situation in which the affidavit supporting the search warrant is tainted by evidence obtained in violation of the Fourth Amendment," but the Second and Eighth Circuits have held that it can, "at least under some circumstances").

Ironically, the Government cites to the Eleventh Circuit's opinion in *Lockett* several times. *See* Doc. 35 at 11, 14. Despite those citations, it never notes *Lockett*'s explanation of the two-part test, discussed below, that applies when a warrant application relies on allegedly illegally obtained evidence. As discussed more fully below, this omission led the Government to focus exclusively on whether the application set forth sufficient facts to establish probable cause, notwithstanding the information from the traffic stops. *Id*. Even assuming the Government

is correct that the remaining material in the application supported probable cause, it does not address the second step of the inquiry; whether the decision to seek the warrant was in any way "prompted by" the illegally obtained information.  *See Lockett*, 533 F. App'x at 965-66.

Despite the parties' failure to identify the relevant structure for the Court's analysis of Lowe's motion, that structure is relatively clear. *Lockett* indicates a two-part test to determine whether evidence obtained pursuant to an allegedly tainted warrant is still admissible.[2]  *See Lockett*, 533 F. App'x at 965.  "First the court must excise from the search warrant affidavit any information gained during the arguably illegal [search] and determine whether the remaining information is enough to support a probable cause finding.  If the remaining information is enough to support a probable cause finding, the court must then determine whether the officer's decision to seek the warrant was 'prompted by' what he had

---

[2]  *Lockett* involves allegations that a search warrant was sought for a property based on a prior entry onto that same property.  *See* 533 F. App'x at 960.  The procedure discussed in *Lockett is* well-established in that context.  *See, e.g., United States v. Chaves*, 169 F.3d 687, 692-93 (11th Cir. 1999); *see also Murray v. United States*, 487 U.S. 533, 537 (1988) (discussing "the 'independent source' doctrine").  There is no indication that the procedure is limited to cases where the alleged Fourth Amendment violation is an unlawful entry, however.  The Northern District has suggested *Lockett* applies in considering a challenge similar to Lowe's.  *Latimore*, 2014 WL 3109183, at * 2 n. 1.

seen during the arguably illegal [search].   To determine whether the officer's decision to seek the warrant was prompted by [the illegal search], courts ask whether the officer would have sought the warrant even if he had not [searched]." *Id.* at 965-66 (internal quotation marks and citation omitted).

Lowe contends that the traffic stops that occurred on June 27, 2018 and September 11, 2018 were unconstitutionally prolonged.  *See* doc. 29 at 9-10; *see also generally* doc. 47 (referring to June *24th*, 2018 traffic stop, apparently mistakenly).   In this case, as mentioned above, the affiant expressly states that surveillance operations were initiated on the two 46th Street addresses "based on the above information," including the June 27th, 2018 traffic stop.  *See* doc. 43-2 at 5; *supra* at 4.  Given that express causal connection, the only indisputably untainted information in the warrant is that which was collected prior to the initiation of the surveillance in July 2018, but excluding the information obtained through the June 27th traffic stop.

That information is clearly insufficient to establish probable cause to search the Terrace St. address.  As defendant's brief notes, "the anonymous tipsters implicated a residence that was not the one that the

applicant sought permission to search." Doc. 29 at 7; *see also* doc. 43-2 at 4. The information from the individuals involved in the June 14, 2018 and July 3, 2018 traffic stops was also related to the 46th St. locations. *See* doc. 43-2 at 5. To be sure, subsequent information provided some connection between the prior addresses and the address searched, but that information is, at least arguably, tainted by the allegedly illegal traffic stop. The undisputed December 11, 2017 traffic stop, which revealed a considerable quantity of narcotics was similarly unconnected to the Terrace St. address.

Given the applicable analysis, then, the Court must consider several closely related questions. First, the Court must examine whether the challenged traffic stops, in fact, violated the Fourth Amendment. If they did not, then none of the allegations in the warrant application would be tainted and the standard deferential consideration of the warrant would apply. *See Gates*, 462 U.S. at 238-39. Unless the Court could positively determine that those traffic stops were valid it would have to proceed to the second part of the test and determine whether the decision to seek the warrant was " 'prompted by' what he saw during the arguably illegal [search].'" *Lockett*, 533 F. App'x at 965-66. That second

part of the test would be required even if the Court determined after "excis[ing] from the search warrant affidavit any information gained during the arguably illegal" search that the application nevertheless provided sufficient probable cause. *Id.* The briefing and record as they stand are insufficient to undertake either inquiry.

First, the propriety of the traffic stops is legally uncertain. Lowe's argument, presented largely in his supplemental brief, that the traffic stops on June 27 and September 11, 2018 were unconstitutionally prolonged relies almost exclusively on the Eleventh Circuit's opinion in *United States v. Campbell*, 970 F.3d 1342 (11th Cir. 2020). *See generally* doc. 47. However, that opinion has been vacated and the Court of Appeals has agreed to rehear the case *en banc*. *See United States v. Campbell*, 981 F.3d 1014, 1014-15 (11th Cir. 2020). There is a question of the retroactive application of *Campbell*, given that the stops at issue here occurred in 2018. Defendant attempts to resolve this question by tracing *Campbell*'s reasoning back to the Supreme Court's 2015 decision in *Rodriguez v. United States*, 575 U.S. 348 (2015). *See* doc. 47 at 4, 4 n.4. The Court might infer what defendant would argue under *Rodriguez* from his argument based on *Campbell*, but it is his burden to establish

16

that the warrant is invalid. Given that burden, the Court will not infer an argument for him.

Even if the Court somehow presupposed the stops' invalidity—and proceeded to consider whether the warrants were valid despite their reliance on arguably illegally obtained evidence—its analysis would founder on a factual gap. The two-part test for warrants based on allegedly illegally obtained information requires that, even if probable cause remains after excising the illegally obtained information, "the court must then 'determine whether the officer's decision to seek the warrant was 'prompted by what he had seen during the arguably illegal [search].'" *Lockett*, 533 F. App'x at 966 (quoting *Noriega*, 676 F.3d at 1260). There is simply nothing in the record to permit the Court to determine whether Det. Valdivieso would have sought the warrant independently of information obtained during the "arguably" illegal traffic stops. Thus, absent a definitive determination that the traffic stops did not violate the Fourth Amendment, the Court cannot determine whether the Government's argument that the affidavit provides probable cause, notwithstanding the excision of information gained during the traffic stops, is sufficient to avoid suppression.

17

A final word must be said about the Government's reliance on *Leon*'s good-faith exception the exclusionary rule.  *See* doc. 35 at 15-16; doc. 49 at 2.  The Court agrees that "[t]here is no evidence or allegation in this case that Detective Valdivieso misled the State Recorders Court with knowingly false information or material omissions; the judge did not wholly abandon his judicial role; the affidavit is not so lacking in probable cause as to render belief in its existence entirely unreasonably, and the warrant is not facially deficient."  Doc. 35 at 16.  However, the allegation that information in the warrant application may have been procured through a search in violation of the Fourth Amendment precludes the application of *Leon*.  *See Zarabozo*, 378 F. App'x at 940.  In order to adequately support its argument that *Leon* applies, then, the Government would have to establish that the disputed traffic stops did not violate the Fourth Amendment.  As discussed above, the Court is unable to reach such a conclusion without further briefing.

## III.  Conclusion

Accordingly, the parties must provide further briefing and, perhaps, additional evidence.  To avoid compounding the complexity of arguments presented across multiple rounds of briefing, the Court will require the

parties to submit superseding briefs. Within thirty days of the date of this Order defendant Lowe must submit a superseding Motion to Suppress Evidence. That motion must be complete in itself, without incorporating by reference any prior submission. It should specifically identify the information in the warrant application that Lowe contends arose from searches or seizures that violated the Fourth Amendment. To the extent that he contends any of those Fourth Amendment violations involved prolonged traffic stops, he must explain the proper standard for making that determination, given the vacation of *Campbell*. Upon submission of that motion, the Clerk is **DIRECTED** to **TERMINATE** the currently pending Motion to Suppress Evidence. Doc. 29. Responses and replies should be filed according to the Court's Local Rules. *See* S.D. Ga. L. Crim. R. 12.1 ("Unless otherwise ordered responses to motions shall be filed within fourteen (14) days after service of the motion."); S.D. Ga. L. Civ. R. 7.6 (Reply Briefs); *see also* S.D. Ga. L. Crim. R. 1.1 (incorporating Local Civil Rules). Those responses and replies must also be complete in themselves and not incorporate prior argument by reference.

Despite the need for additional argument, the Court does not assume that additional evidence will be required. The parties are free to rely on

19

the testimony and documentary evidence admitted at the hearing.  If either party contends that the hearing on defendant's motion should be reopened and additional evidence taken, that party's brief should include a specific request to reopen the hearing.  If the opposing party does not agree that the hearing should be reopened, after such a specific request is made, that party must respond to the request.  Failure to respond to a specific request to reopen the hearing will be construed as consent to reopen it.

**SO ORDERED**, this 1st day of April, 2021.

Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia